IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDWARD J. HARRIS,

                    Plaintiff,

                        v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

                    Defendant.
_____

Civil No. 07-810-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

      Plaintiff, Edward Harris ("Harris"), seeks judicial review of the Social Security

Commissioner's final decision denying his applications for Child's Disability Benefits,

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II

1 - FINDINGS AND RECOMMENDATION

and XVI of the Social Security Act.  This court has jurisdiction under 42 USC §§ 405(g) and

1383©).  The Commissioner's decision should be affirmed for the reasons that follow.

## **BACKGROUND**

Born in 1957, Harris completed a general equivalency degree.  Tr. 103, 137.[1]  Because

Harris performed no substantial gainful activity ("SGA") in the 15 years prior to the present

applications, he has no relevant work history.  Tr. 106.  In an automobile accident in 1977,

Harris suffered a compound skull fracture with brain laceration, and fractures of his pelvis, ribs

and an arm.  Tr. 261-65.  Harris applied for SSI on April 24, 2001,[2] and applied for adult

children's DIB on May 10, 2001.  Tr. 103-04.

Harris alleges disability since January 4, 1977, due to "stroke at age 23," "hole in skull,"

dizziness and difficulties with balance and equilibrium, joint stiffness, hip problems, and

allergies.  Tr. 131.  Harris' applications were denied initially and upon reconsideration.  Tr. 74-

78, 83-85.  On November 20, 2002, a hearing was held before an Administrative Law Judge

("ALJ").  Tr. 412-45.  On July 11, 2003, the ALJ found Harris not disabled.  Tr. 16-29.  Harris

appealed that decision to this court, and on September 26, 2005, based on the stipulation of both

parties, this court remanded the matter for further proceedings.  Tr. 517-18.

On June 1, 2006, the ALJ held a second hearing (Tr. 559-610) and subsequently reviewed

both applications.  Tr. 450.  On March 30, 2007, the ALJ determined that Harris could perform

work in the national economy and, therefore, again found him not disabled.  Tr. 449-66.  The

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on August 14, 2007 (Docket #8).

[2] The documents pertaining to this application are absent from the record.  Tr. 5.

2 -  FINDINGS AND RECOMMENDATION

Appeals Council did not assume jurisdiction, making the ALJ's March 30, 2007, decision the Commissioner's final decision. 20 CFR §§ 404.984, 416.1484. Harris seeks review of this finding.

## DISABILITY ANALYSIS

A child or an adult child may be entitled to DIB under Title II based upon the earnings record of an insured parent. 20 CFR § 404.350(a). To qualify, the claimant must show that the disability began before he reached age 22. *Id.* In construing an initial disability determination under Titles II and XVI, the Commissioner engages in a sequential process encompassing between one and five steps. 20 CFR §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing SGA. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12 month duration requirement. 20 CFR §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a

regular and continuing basis, despite limitations imposed by his impairments. 20 CFR

§§ 404.1520(e), 416.920(e); Social Security Ruling 96-8p, 1996 WL 374184 (July 2, 1996). The

ALJ uses this information to determine if the claimant can perform past relevant work at step

four. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the claimant cannot perform past relevant work, the ALJ must determine if the

claimant can perform other work in the national economy at step five. *Yuckert*, 482 US at 142;

*Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at

1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs

exist within the national economy in the claimant's RFC and vocational qualifications. *Id*; 20

CFR §§ 404.1566, 416.966. If the Commissioner meets this burden the claimant is not disabled.

20 CFR §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Notwithstanding a finding of disability after this five-step process, a claimant "shall not

be considered to be disabled . . . if alcoholism or drug addiction [is] a contributing factor

material to the Commissioner's determination that the individual is disabled." 42 USC §

1382c(a)(3)(J); 20 CFR §§ 404.1535(a), 416.935(a); *Bustamante v. Massanari,* 262 F3d 949,

955 (9th Cir 2001). Thus, if the claimant is found disabled and there is medical evidence of a

substance abuse disorder, the ALJ must reevaluate the record to determine whether the claimant

would still be found disabled if he or she stopped using drugs or alcohol. 20 CFR

§§ 404.1535(b), 416.935(b). The claimant bears the burden of proving that drug addiction or

alcoholism is not a contributing factor material to the disability determination. *Parra v. Astrue*, 481 F3d 742, 748 (9th Cir 2007), *cert denied*, ___ US ___, 128 S Ct 1068 (Jan. 14, 2008).

## THE ALJ'S FINDINGS

The ALJ found Harris' alcoholism, drug abuse, history of skull fracture and brain surgery, and cognitive disorder "severe" at step two. Tr. 453. At step three, the ALJ found that these impairments did not meet or equal a listed impairment. Tr. 456. The ALJ subsequently concluded that, *including* the effects of his substance abuse disorders, Harris could not perform work in the national economy. Tr. 458.

The ALJ next considered the effects of Harris' impairments *excluding* the impact of his substance abuse disorders. Here, the ALJ found Harris "not entirely credible" regarding his alleged impairments and their impact upon his ability to work. Tr. 459. Although the ALJ found "no physical limitations," she determined that Harris is limited to performing "simple tasks that do not involve close contact with the public or co-workers." *Id*.

Based on this RFC and the testimony of a vocational expert, the ALJ concluded that Harris retains the ability to perform significant work in the national economy as, for example, a welder, kitchen helper, or laundry worker. Tr. 465. The ALJ, therefore, found Harris not disabled under the Act at any time through the date of her decision. Tr. 466.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir

2004).  This court must consider the record as a whole, weighing both the evidence that supports

and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir

2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court may not

substitute its judgment for that of the Commissioner.  *Id,* citing *Robbins v. Soc. Sec. Admin.*, 466

F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading.  *Batson*, 359 F3d at 1193.

## FINDINGS

Harris contends the ALJ improperly assessed medical evidence, improperly assessed his

testimony and that of a lay witness, and inaccurately assessed his RFC and his ability to perform

work existing in the national economy.

## I.    Medical Source Statements

Harris contends the ALJ failed to appropriately evaluate the opinions of evaluating

psychologist Julia Wong-Ngan, Ph.D., reviewing psychologist John Crossen, Ph.D., examining

physician Huey Meeker, M.D., Disability Determination Services[3] ("DDS") reviewing

physicians, and medical expert William DeBolt, M.D.

### A.    Legal Standard

The ALJ must generally accord greater weight to a treating physician's opinion than an

examining physician's opinion and, in turn, accord greater weight to the opinion of an examining

physician than to that of a reviewing physician.  *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995).

The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a

---

[3] DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 USC § 421(a) and 20 CFR § 404.1503.

controverted opinion from a treating or examining physician and "clear and convincing reasons" for rejecting an uncontroverted opinion. *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005). A reviewing physician's opinion does not constitute substantial evidence justifying rejection of a treating or examining physician's opinion unless it is "supported by other evidence of the record and . . . consistent with it." *Lester*, 81 F3d at 830, *Morgan v. Comm'r*, 169 F3d 595, 600 (9th Cir 1999), citing *Andrews v. Shalala*, 53 F3d 1035, 1041 (9th Cir 1995). The opinion of the treating physician is not necessarily conclusive to the ultimate issue of disability, which is reserved for the Commissioner. 20 CFR §§ 404.1527©)(1), 416.927©)(1); *see also Morgan*, 169 F3d at 601.

### B.   Mental Impairments

#### 1.   Examining Psychologist Dr. Wong-Ngan

Examining psycholgist Dr. Wong-Ngan evaluated Harris on May 9, 2001. Tr. 319-23. Dr. Wong-Ngan assessed a cognitive disorder, alcohol and cannabis dependence, and a depressive disorder. Tr. 323. The ALJ discussed Dr. Wong-Ngan's opinion in detail, reiterating her diagnoses and noting that she "reported that the claimant's limitations and mental status were impacted by his ongoing substance abuse." Tr. 454, 462.

Harris now contends that the ALJ erroneously relied upon Dr. Wong-Ngan's opinion in assessing the material impact of his substance abuse upon his impairments. Harris bases this contention upon the following instruction which prefaces Dr. Wong-Ngan's "Mental Residual Functional Capacity" form:

> In responding to the ratings on this form, please <u>do not include</u> any limitations which you believe the individual has as a result of his or her alcoholism or drug addiction, if any. In other words, do not include limitations which would go away if the individual stopped using drugs or alcohol.

7 - FINDINGS AND RECOMMENDATION

Tr. 324 (emphasis in original).

Dr. Wong-Ngan submitted three documents dated May 9, 2001.  First she completed a clinical report assessing Harris with a "cognitive disorder" which specifically noted Harris' chronic alcohol and marijuana abuse.  Tr. 322.  Dr. Wong-Ngan stated that "chronic alcohol and marijuana use probably also contributes [*sic*] to cognitive impairment."  *Id.*  Second, Dr. Wong-Ngan completed a "Mental Residual Functional Capacity" form, noting DSM[4] diagnosis codes 303.90 (Alcohol Dependence) and 305.20 (Cannabis Dependence).  Tr. 325.  This notation followed the instructions to "exclude" effects of drug and alcohol use (cited above) and is internally contradictory for this reason.  Third, also on May 9, 2001, Dr. Wong-Ngan completed a "severity rating form."  Tr. 326-27.  This form did not contain the exclusive language.  *Id.* Dr. Wong-Ngan specifically noted on this form that Harris "ETOH [alcohol] daily plus regular marijuana *contributes* to cognitive impairment and probably depression."  Tr. 327 (emphasis added).

The ALJ's assessment of Dr. Wong-Ngan's opinion referenced all three documents. Tr. 454, 462.  In addition, after remand and in response to the ALJ's written inquiry, Dr. Wong-Ngan clarified that she had "considered [Harris'] drug/alcohol use," that "he was using at the time of [May 9, 2001] evaluation," and that "[h]is limitations and mental status were impacted by his ongoing substance abuse."  Tr. 558.  The ALJ specifically noted this response as well, finding that Dr. Wong-Ngan "reported that the claimant's limitations and mental status were impacted by his ongoing substance abuse."  Tr. 454, 462.

---

[4] DSM is the *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text Revision, 2000).

8 - FINDINGS AND RECOMMENDATION

The ALJ is responsible for resolving conflicting medical opinions. *Batson*, 359 F3d 1195. The ALJ's finding that Dr. Wong-Ngan's three documents, clarified by her later response, show that Harris' drug and alcohol use impacted his mental impairments is based upon the record. Harris fails to point to another mental health examiner with contradictory findings. For these reasons the ALJ's findings regarding Dr. Wong-Ngan's opinions should be affirmed.

### 2.    Reviewing Psychologist Dr. Crossen

Harris contends that reviewing psychologist Dr. Crossen misinterpreted Dr. Wong-Ngan's report. On December 11, 2002, the ALJ submitted a questionnaire to Dr. Crossen asking his opinion regarding Harris' mental impairments and provided "exhibits selected for inclusion in the record." Tr. 383.

In a response dated February 24, 200[3][5] (Tr. 408-11), Dr. Crossen noted Harris' documented 1977 brain injury and history of chronic alcohol abuse and suggested relevant listings, including 12.09 (substance addiction disorders), 12.02 (organic mental disorders), 12.04 (affective disorders, including depression), and 12.08 (personality disorders). Tr. 408. Dr. Crossen affirmed that Harris' impairments met or equaled a listed disorder. Tr. 386, 408. He also stated:

> *Including* the 12.09 [substance addiction disorder] condition as of 5/9/01, his combined impairments are Moderate in Activities of Daily Living, Marked in Concentration and Pace, Marked in Social, and unknown in Episodes of Decompensation. Without the 12.09 condition, it is most likely that his deficits would be Mild in all areas except Social, where they would be Moderate.

Tr. 409-10 (emphasis added).

---

[5] Although dated February 24, 2002, Dr. Crossen's numbered responses correspond with the ALJ's numbered questions and reference exhibit numbers in the record. Therefore, the 2002 date is clearly a typographical error and should have been 2003.

9 - FINDINGS AND RECOMMENDATION

Dr. Crossen finally stated that Dr. Wong-Ngan's narrative report "provides support for her ratings [regarding Harris' impairment], but also provides qualifications about how the ratings are affected by the 12.09 [substance addiction disorder] condition.  Those categories rated Marked in limitation reflect significant problems with substance abuse."  Tr. 409.

Dr. Crossen's report is consistent with Dr. Wong-Ngan's clinical evaluation and severity rating.  Because Harris does not establish that Dr. Crossen's conclusion is based upon a "misinterpretation" of Dr. Wong-Ngan's report, the ALJ's reliance on Dr. Crossen's opinion should be affirmed.

### C.    **Physical Impairments**

Harris also contends the ALJ erroneously evaluated the physical restrictions imposed by his hand and hernia impairments.

### 1.    **Examining Physician Dr. Meeker**

After examining Harris on July 9, 2001, Dr. Meeker completed a physical RFC report. Tr. 328-33.  Dr. Meeker assessed a right groin hernia, right hand carpal tunnel syndrome, paresthesia of the right chest "most likely from previous trauma," and chronic obstructive pulmonary disease.  Tr. 331.  He also noted that Harris exhibited a  "poor level of social functioning."  *Id.*  Dr. Meeker's RFC assessment stated that Harris could "occasionally" lift less than 10 pounds, stand or walk about six hours in an eight-hour workday, perform unlimited pushing and pulling with no postural limitations, and was "occasionally" limited in climbing, balancing, stooping, kneeling, crouching, or crawling.  Tr. 332.  Dr. Meeker assessed no environmental limitations and restricted Harris to occasional reaching, handling, fingering, and

feeling.  Tr. 333.  He based his limitations solely upon Harris' carpal tunnel syndrome and hernia "until fixed" and cited no other impairments in his RFC assessment.  *Id.*

The ALJ did not find Harris' carpal tunnel syndrome or hernia "severe."  Tr. 453.  The ALJ noted that the examining physician, Paul Ash, M.D., found no evidence of carpal tunnel syndrome in examination or nerve conduction studies.  Tr. 454-55, 461.  That conclusion is supported by Dr. Ash's examination of Harris in May 2001.  Tr. 316-18.  Regarding Harris' hernia, the ALJ noted that it was not clinically evident for the required 12 durational period.  Tr. 455, 461.  That conclusion is supported by the examination of Dr. Brett C. Sheppard in December 2001.  Tr. 401-02.  The ALJ consequently assessed no limitations from these impairments.

The ALJ's analysis is based upon the record.  Harris does not have a treating physician to offer a controlling opinion.  The ALJ must therefore determine how much weight to accord conflicting examining source opinions.  The ALJ may do this by discussing  the manner in which these opinions are supported by appropriate clinical findings.  *Bayliss*, 427 F3d 1216.  Here, the ALJ appropriately noted that Dr. Ash could not confirm Harris' carpal tunnel syndrome with clinical testing and that clinical examination did not reveal that Harris sustained a hernia for the required period.  Thus, the ALJ's analysis of the opinions of Drs. Meeker and Ash should be sustained.

## 2.    DDS Reviewing Physicians

Harris also contends that the ALJ erroneously relied upon a medical expert in rejecting the lifting restrictions imposed by DDS reviewing physician opinions.

11 - FINDINGS AND RECOMMENDATION

In July 2001, DDS reviewing physicians found that Harris could frequently lift or carry 10 pounds, stand, walk, or sit about six hours in an eight-hour workday, and was not limited in pushing or pulling.  Tr. 337.  They also stated that Harris could frequently climb, balance, stoop, kneel, or crawl, and occasionally climb or crouch.  Tr. 338.  They assessed no manipulative, visual, communicative, or environmental limitations.  Tr. 339-40.  However, the DDS physicians noted that the severity or duration of his symptoms "is disproportionate to the expected severity or expected duration on the basis of the claimant's medically determinable impairments," that except for pain due to the hernia, "the remainder of [Harris'] allegations are not supported by any MDIs," that he "presented to exams intoxicated," and that he "is noted to have markedly inconsistent presentations at exams."  Tr. 341, 343.

Medical expert Dr. DeBolt testified at both of Harris' hearings.  Tr. 591-600.  In November 2002, Dr. DeBolt testified that "the medical diagnoses [of record] include residuals of a fractured skull with a laceration of the brain, and emphysema secondary to smoking, empyema,[6] and fractured ribs, also related to car accident, and a poly-substance abuse."  Tr. 438-39.  In June 2006, the ALJ asked Dr. DeBolt to specifically consider the medical record established between 1977 and 1979 regarding Harris' injuries stemming from his 1977 automobile accident.  Tr. 592.  Dr. DeBolt described these injuries and stated that by May 1978 "they had improved to a level where he really didn't need treatment for them.  I mean they were just residuals of the auto accident."  Tr. 594-95.  Based upon the record, he saw no evidence of a "severe" physical impairment "since January of 1977."  Tr. 595-96.

---

[6] Empyema is "an accumulation of pus in a body cavity, especially the pleural space, as a result of bacterial infection, such as pleurisy or tuberculosis."  Kenneth N. Anderson et al. eds., *Mosby's Medical, Nursing, & Allied Health Dictionary* ( 5th ed. 1998).

12 - FINDINGS AND RECOMMENDATION

The ALJ gave Dr. DeBolt's analysis "significant weight" and found it "consistent when viewing the totality of the evidence." Tr. 465. Harris fails to show that the totality of the evidence contradicts Dr. DeBolt's analysis. As discussed above, the record does not support the only physical limitations noted by Dr. Meeker in July 2001, namely carpal tunnel syndrome and hernia. Furthermore, the DDS physicians stated reasons to distrust their own examination results. Thus, the ALJ's citation to Dr. DeBolt should be sustained.

## II.    Harris' Credibility

Harris also challenges the ALJ's credibility findings. The ALJ found Harris' statements "concerning the intensity, persistence and limiting effects of [his] symptoms not entirely credible." Tr. 459. The ALJ's credibility finding specifically cited Harris' activities of daily living, lack of medical treatment, the objective medical treatment of record, drug and alcohol use, and work history. Tr. 459-61, 463.

### A.    Credibility Analysis

Once a claimant shows an underlying impairment which may reasonably be expected to produce the pain or other symptoms, and absent any evidence of malingering, the ALJ must provide "clear and convincing" reasons to discredit the claimant's testimony regarding the severity of symptoms. *Lingenfelter,* 504 F3d 1036 (citations omitted). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with

personal knowledge of the claimant's functional limitations.  *Smolen v. Chater*, 80 F3d 1273,

1284 (9th Cir 1996).  The ALJ may also employ ordinary techniques of credibility evaluation,

such as weighing inconsistent statements regarding symptoms.  *Id.*  Once a claimant shows an

underlying impairment, the ALJ may not, however, make a negative credibility finding "solely

because" the claimant's symptom testimony "is not substantiated affirmatively by objective

medical evidence."  *Robbins*, 466 F3d at 883 (citation omitted).

      **B.**     **Analysis**

      Harris challenges the ALJ's citation to his activities of daily living, substance abuse and

sporadic medical treatment.

      **1.**     **Activities of Daily Living**

      The ALJ noted that Harris reported completion of household chores such as shopping,

cooking, vacuuming, mowing the lawn, and doing yard work.  Tr. 461.  The ALJ also noted that

Harris reported reading, taking his mother to medical appointments, and "building a three

dimensional puzzle."  Tr. 461, 463.   Finally, the ALJ noted that Harris reported walking a mile

and a half per day and was able to walk two or three miles.  *Id.*

      Harris claims the ALJ erroneously based his credibility discussion upon his ability to

complete some household and outdoor chores and daily activities, and sporadic medical

treatment.  While a claimant need not "'vegetate in a dark room,'" *Cooper v. Bowen*, 815 F2d

557, 561 (1987), quoting *Smith v. Califano*, 637 F2d 968, 971 (3rd Cir 1981), the ALJ may cite a

claimant's daily activities in conjunction with other factors.  *Smolen*, 80 F3d at 1284.  Because

the ALJ cites broader activities than Harris' allegations of totally disabling symptoms and

limitations, her credibility findings regarding Harris' activities of daily living should be affirmed.

2.    **Harris' Substance Abuse**

Throughout her decision, the ALJ repeatedly noted Harris' documented alcohol use and reported marijuana use. Tr. 453-56, 460-65. Harris admits that he continues to drink and use drugs in an attempt to alleviate his constant pain. However, he argues that his substance abuse does not eliminate the underlying physical and mental conditions which actually cause him to experience the symptoms he describes. As a result, he contends that the ALJ may not make a negative credibility finding based on his admission of substance abuse.

The ALJ did not explicitly find Harris lacked credibility because of his drug and alcohol use. Tr. 459-65. The ALJ noted that Harris testified that he "had not used street drugs for months," but also testified that he smoked marijuana daily. Tr. 460. The ALJ may cite such contradictory testimony in a credibility determination. *Smolen*, 80 F3d at 1284.

The ALJ's references to Harris' daily intoxication and marijuana use are relevant to the ALJ's finding that Harris could perform substantial gainful activity absent this drug and alcohol use. The ALJ did not, however, base her credibility finding upon this discussion. For this reason, Harris' submission fails.

3.    **Objective Medical Evidence**

Harris also challenges the ALJ's citation to the medical evidence, contending that the ALJ found only that he did not seek treatment. Harris testified that he did not seek treatment due to poverty. A claimant should not be faulted for failing to seek treatment he cannot afford. *Gamble v. Chater*, 68 F3d 319, 321 (9th Cir 1995). If the ALJ's credibility analysis relied only Harris' failure to seek treatment, her analysis would be flawed.

15 - FINDINGS AND RECOMMENDATION

The ALJ may reject symptom testimony that is based upon an impairment unsupported by the medical evidence.  The ALJ may also cite the medical record in concert with other factors in assessing a claimant's credibility.  *Smolen*, 80 F3d at 1284.  In this case, the ALJ rejected Harris' asserted limitations of  a hernia, carpal tunnel syndrom, "knee problems, ribs popping out of place, and fainting once or twice a week."  Tr. 461.  In doing so, the ALJ made specific findings noting that Harris' hernia was not clinically evident for 12 months, that his nerve conduction studies were normal, and that medical evidence does not establish underlying impairments regarding Harris' reported fainting, hearing difficulties, bowel urgency, and ribs "popping out of place."  *Id*.  These findings are based upon the record and provide adequate support for the ALJ's rejection of portions of Harris' assertions regarding his limitations.  For these reasons, the ALJ's citation to Harris' medical record, in conjunction with her other findings, is appropriate and should be affirmed.

### 4.    Work History

The ALJ noted that Harris "worked only sporadically throughout the years," which "raises a question as to whether [his] unemployment is actually due to medical impairments. Tr. 463.  The ALJ may cite a claimant's poor work history.  *Smolen*, 80 F3d at 1284.  Thus, this reasoning was not erroneous.

### C.    Credibility Conclusion

Except as noted, the ALJ's findings provide adequate reasons for questioning Harris' credibility.  This court may sustain an ALJ's overall credibility decision even if specific findings are not upheld.  *Batson*, 359 F3d at 1197.  Because the ALJ's credibility decision is based upon substantial evidence, it should be affirmed.

III.    **Lay Witness Testimony**

Harris contends the ALJ inappropriately evaluated the statements of his neighbor, Ida

Primm, and his mother, Carolin Griesbach.  This court's remand order instructed the ALJ to

"fully consider the lay witness statements and provide reasons for the weight given to them."

Tr. 517.  Deviation from this order may warrant reversal.  *Sullivan v. Hudson*, 490 US 877, 886

(1989).

A.    **Legal Standard**

Friends and family members in a position to observe the claimant's symptoms and daily

activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F3d

915, 918-19 (9th Cir 1993).  The ALJ has a duty to consider such lay witness testimony.  20 CFR

§§ 404.1513(d), 404.1545(a)(3), 416.913(d), 416. 945(a)(3); *Lewis v. Apfel*, 236 F3d 503, 511

(9th Cir 2001).  The ALJ may not reject such testimony without comment, *Nguyen v. Chater*, 100

F3d 1462, 1467 (9th Cir 1996), but may reject lay testimony inconsistent with the medical

evidence.  *Lewis*, 236 F3d at 512.

1.    **Ida Primm**

Primm completed a form submitted by Harris' attorney.  Tr. 252-55.  On that form,

Primm endorsed a "marked" functionality impairment without explanation or reference to

personal observation.  Tr. 252.  She also endorsed "moderate" restrictions in Harris' activities of

daily living, stating that Harris' "physical weakness would make it difficult to do a sustained,

persistent daily job."  Tr. 253.  Primm stated that Harris "runs out of breath quickly," is slow

moving, and requires rest after activity such as serving a pie.  *Id.*  Finally, she endorsed a

"marked" limitation in Harris' social functioning, noting that he avoids neighbors and lives alone in a tent. *Id.*

The ALJ gave Primm's statements "very little weight because she was inconsistent, vague, and there is more reliable evidence of record from medical professionals who are trained to evaluate impairments and their impact on functional capacity." Tr. 464. As an example of vagueness, the ALJ noted that Primm "had no knowledge of episodes of decompensation." *Id*. As an example of inconsistency, the ALJ noted Primm's report that Harris lived in a tent outdoors and was physically weak. Tr. 464. The ALJ found these statements contradictory. *Id.* The ALJ may reject lay witness statements uncorroborated by direct observation. *Dodrill*, 12 F3d at 918-19. The ALJ also may reject contradictory testimony. *Lewis*, 236 F3d at 512. Because the ALJ had a reasonable basis for discounting Primm's statements, her analysis should be sustained.

### C.    Carolin Griesbach

On a questionnaire, Griesbach stated that Harris avoids people, has memory and focus difficulties, requires frequent naps, and cannot afford medication. Tr. 174-82. Griesbach also referenced Harris' daily alcohol use, suggesting that Harris used alcohol because he did not have pain medication prescriptions. Tr. 171, 174.

The ALJ found Greisbach's statements "repetitive" and "of limited use." Tr. 464. This does not constitute a germane reason for rejecting her testimony. However, an ALJ's error concerning lay testimony is harmless if the court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F3d 1050, 1056 (9th Cir 2006). Griesbach's testimony

cannot establish disability absent the effects of drugs and alcohol.  Thus, Harris fails to establish reversible error with respect to Griesbach's testimony.

## IV.   <u>Vocational Expert</u>

In making a step five finding which includes non-exertional limitations which are not adequately addressed by the grids, the ALJ is required to propound a hypothetical to a vocational expert ("VE ").  *Tackett*, 180 F3d at 1101-02.  This hypothetical must be "based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations."  *Osenbrock v. Apfel*, 240 F3d 1157, 1165 (9th Cir 2001) (citation omitted).

The VE testified that an individual with the ALJ's indicated RFC could perform work as a gun welder, laundry worker, and kitchen helper.  Tr. 603-04.  The ALJ relied upon this testimony in finding that Harris could perform work in the national economy at step five. Tr. 465.  Harris contends the ALJ's reliance upon this testimony is flawed in two respects.

### A.   <u>Supported Limitations</u>

Harris contends that the ALJ failed to include all limitations in his hypothetical questions to the VE, specifically limitations on lifting, sitting, standing, reaching, handling, and fingering given by examining physician Dr. Meeker and by the DDS physicians.

The ALJ need not include limitations unsupported by the medical record.  *Osenbrock*, 240 F3d at 1164-65.  As discussed above, Harris has failed to show that the ALJ's RFC assessment is flawed.  Thus, his hypothetical question to the VE was not flawed.

### B.   <u>DOT Reasoning Requirements</u>

Harris also contends that the ALJ's finding is inconsistent with the *Dictionary of Occupational Titles* ("DOT").  He specifically alleges that the ALJ incorrectly considered "general educational development " ("GED") reasoning requirements.

The ALJ instructed the VE to consider limitations including "simple tasks."  Tr. 603.  As noted, the VE cited three DOT job specifications:  laundry worker, kitchen helper, and gun welder.  Tr.  603-04.  The VE indicated that these jobs are compatible with "simple tasks."  *Id.* The DOT assigns GED reasoning level one to the laundry worker ["laundry laborer"] and reasoning level two to the kitchen helper and gun welder positions.  DOT, *available at* http://www.occupationalinfo.org (last visited May 2, 2008).

GED level two reasoning specifies an ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions," as well as an ability to "deal with problems involving a few concrete variables in or from standardized situations."  DOT, Appendix 3, *available at* http://www.occupationalinfo.org/appendxc_1.html#III (last visited May 2, 2008).

The VE stated that a person limited to "simple tasks" could perform the specified jobs. Tr. 604.  Harris does not establish that "simple tasks" are inconsistent with level two reasoning. Instead, his argument `       addresses simple one, two step *instructions*.  Harris provides no citation establishing that the ALJ erred regarding simple one, two step *tasks*.  The ALJ's reliance upon the VE and, subsequently, the *DOT* should be sustained.

## **RECOMMENDATION**

Harris fails to establish reversible error in the ALJ's analysis of the medical evidence, the relevant testimony, or the ALJ's step five findings.  Harris also fails to show error in the ALJ's

finding that his drug and alcohol use was a contributing factor to his disability determination.  As a result, the Commissioner's decision that Harris did not suffer from disability and is not entitled to benefits should be affirmed.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due by June 9, 2008.  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 20th day of May, 2008.

/s/ Janice M. Stewart____
Janice M. Stewart
United States Magistrate Judge